UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Microboard Processing, Incorporated,<br>    *Plaintiff*,<br><br>    v.<br><br>Crestron Electric, Incorporated,<br>    *Defendant*. | Civil No. 3:09cv708 (JBA)<br><br><br><br>March 29, 2011 |

RULING ON RECOMMENDED RULING

After Plaintiff Microboard Processing, Inc. ("MPI") and Defendant Crestron Electric, Incorporated ("Crestron") reported their settlement, this case was closed. MPI now moves to reopen the case, and the parties cross–move for enforcement of the Settlement Agreement. Magistrate Judge Margolis issued a Recommended Ruling [Doc. # 91] granting Plaintiff's motion to reopen the case but holding Plaintiff's Supplemental Motion to Enforce Settlement and Release Agreement and Defendant's Motion to Enforce Settlement Agreement "in abeyance" pending an evidentiary hearing on the meaning of "ordinary course of business" and "commercially reasonable manner," as well as damages for any breach by either party. Defendant objects to the Recommended Ruling on the basis that it excludes industry standards from its analysis of what is commercially reasonable under the Settlement Agreement, relies on facts and circumstances acquired through the mediation process, and seeks to determine the portion of the settlement figure that was attributable to Defendant's ability to use Excess Materials. For the following reasons, the Recommended Ruling will be adopted in full. The Court presumes familiarity with the factual background, which is described at length in the Magistrate Judge's Recommended Ruling.

I.    Background

Paragraph 1 of the parties' Settlement Agreement, at issue in the pending motions, provides:

> Return of Excess Materials. [Plaintiff] shall return to [Defendant] the Excess Materials in "as-is/where-is" condition to [Defendant], without any warranty being extended. Notwithstanding the foregoing, [Plaintiff] represents that the Excess Materials have been maintained: (1) in the ordinary course of business; and (2) in a commercially reasonable manner for Excess Materials. [Plaintiff] further represents that Exhibit A is true and accurate. [Plaintiff] shall make the Excess Materials available for inspection during business hours and such inspection shall take place within ten (10) days from the full execution of this Agreement. Defendant may reasonably inspect the Excess Materials to determine whether [Plaintiff's] representations are materially accurate. The inspection shall take place on a single calendar day. In an effort to clarify the condition of the Excess Materials, if [Plaintiff's] representations are not materially accurate, or the Excess Materials are not organized in such a fashion (i.e reasonably accessible and predominately in one location) that it is reasonably possible to complete the inspection in one calendar day, the inspection may take longer than one day.
>
> Once [Defendant] determines that those representations are materially accurate, [Defendant] shall pay the settlement funds specified in paragraph two below. After the settlement funds referenced in paragraph two below have been cleared, [Defendant] shall pay for and be responsible for transporting the Excess Materials from [Plaintiff's] facility. [Defendant] shall provide reasonable cooperation to facilitate the transport of the Excess Materials to [Defendant], including, but not limited to, the packaging and loading of the goods on to trucks for the purpose of shipment to [Defendant]. Carrier selection and freight expense [shall] be[] the responsibility of [Defendant]. This shall occur within twenty (20) days after the full execution of this Agreement.

(Settlement Agmt., Ex. A to Pl.'s Mot. Supp. [Doc. # 63], ¶ 1.)

Paragraph 8(e) of the Settlement Agreement, a merger clause entitled "Entire Agreement," further provides:

> This Agreement contains the entire understanding and agreement among the parties and supersedes all prior agreements and understandings, express or implied, oral or written, among the parties. The express terms of this Agreement shall control and supersede any course of performance or usage of the trade inconsistent with any of the terms thereof.

Based on testimony of Crestron's Senior Quality Manager Jorge Urtega, who inspected Excess Materials in MPI's care, Defendant claims that those materials were not maintained in the ordinary course of business or in a commercially reasonable manner, specifically because they were not maintained in accordance with industry standards "written and issued by the JEDEC Solid State Technology Association . . . and the IPC Association Connecting Electronics Industries," that require that materials be "hermetically sealed and in ESD bags along with desiccant." (Sept. 13, 2010 Ltr., Ex. D to *id.* at 2.) Plaintiff maintains that Defendant is trying to add these specific industry standards as a material term to the Agreement as to which there had been no bargaining or agreement.

## II. Discussion[1]

### A. Commercially Reasonable

Magistrate Judge Margolis held that because the Settlement Agreement does not expressly require that Plaintiff maintain excess materials in accordance with industry standards, an evidentiary hearing is necessary to determine whether the terms "commercially reasonable manner" and "ordinary course of business" "really mean 'industry standards,' as argued by defendant." (Rec. Rul. at 10.) Crestron objects to the Recommended Ruling as improperly excluding industry standards "from its analysis of what is commercially

---

[1] Pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 72.2(b), the portions of the Magistrate Judge's decision objected to by Plaintiff are reviewed *de novo*, and any part or the entirety of the Recommended Ruling may be adopted, rejected, or modified.

reasonable under the Settlement Agreement" (Obj. [Doc. # 98] at 1), contending that MPI is in material breach of the settlement because it did not comply with JEDEC and IPC industry standards and that no further hearing or consideration of reasonableness is required. Thus, at issue is whether an evidentiary hearing is necessary to determine the meaning of "commercially reasonable" as used in the Settlement Agreement.

The Settlement Agreement is a fully–integrated contract that contains no reference to any industry standards, including those of JEDEC and IPC. It also includes no definition of "commercially reasonable manner." Crestron maintains that "[a]n industry standard, especially in this case, is akin to the reasonable man standard because it represents what experts have determined is reasonable under the circumstances." (Reply [Doc. # 101] at 1.) However, courts that have interpreted contracts that require undefined "commercially reasonable" conduct have not read industry standards into that term without further evaluation of the parties' circumstances and the consequences of compliance with these standards.

For instance, in *Lemond Cycling Inc. v. PTI Holding, Inc.*, cited by Magistrate Judge Margolis, the plaintiff entered into a written contract with the defendant to distribute cycling accessories, which provided that the defendant would "use its commercially reasonable efforts to develop, produce, market and produce a good quality representative line for [plaintiff]," but did not define "commercially reasonable." No. Civ.03–5441 PAM/RLE, 2005 WL 102969, * 5 (D. Minn. Jan. 14, 2005). The court held that the plaintiff's "broad argument that only industry standards are relevant to the commercial reasonableness determination is unpersuasive," because while "an objective component is instructive as to whether or not [the defendant] acted with commercial reasonableness, there must be a subjective evaluation

4

as well" because "[n]o business would agree to perform to its detriment, and therefore whether or not [the defendant] performed with commercial reasonableness also depends on the financial resources, business expertise, and practices of [the defendant]." *Id.* Similarly, in *Citri–Lite Co. v. Cott Beverages, Inc.*, the court rejected the argument that Crestron now makes—that one objective set of standards not contractually identified and agreed upon should define commercially reasonable—given that "[b]oth parties obviously expect[] to mutually benefit from" a contract, and "it is an absurdity to suggest a reasonable business entity would contractually obligate itself to operate without regard to its business interests." 721 F. Supp. 2d 912, 924 (E.D. Cal. 2010).

Here, whether and how compliance with the "industry standards" of JEDEC and IPC relates to the "commercial reasonableness" MPI agreed to must also take into account factors such as the skills and costs associated with maintaining Excess Materials in accordance with the industry standards compared to the costs to MPI of how it maintained the Excess Materials and the relative product protection efficacy of those respective steps. For example, if the cost and skill needed for compliance with known industry standards were comparable to those needed for the steps MPI took but produced markedly increased protection, then the term "commercially reasonable" may be construed to be measured at least in part, by industry standards. Because an evidentiary determination of how these cost, skills, and efficacy factors relate to industry standards is necessary to determine whether and how to enforce the Settlement Agreement, the Recommended Ruling is adopted to permit Magistrate Judge Margolis to conduct an evidentiary hearing to determine whether MPI's handling of the Excess Materials was done in a commercially reasonable manner.

B. "Rewriting" the Settlement Agreement

Crestron also objects to what it characterizes as Magistrate Judge Margolis's efforts to rewrite the Settlement Agreement in reliance on information she gleaned from the settlement process,[2] particularly:

> in assessing how much of the Excess Materials are not in compliance with plaintiff's representations, defendant has offered to pay $74,168, constituting sixty–two percent of the original settlement figure of $117,500, for the Excess Materials not governed by industry standards, as well as Class 1 and 6 electronic components (but not Class 2 through Class 5a electronic components); this offer was rejected by plaintiff. (Dkt. #74, at 6; Hakula Aff't, ¶ 6; Allentuch Aff't, ¶ 5 & Exhs. 2-3). Such an offer presumes, however, that the entire settlement figure of $117,500 was based upon defendant's ability to use the Excess Materials; the negotiation process reflects, in sharp contrast, that the Excess Materials issue was instead the "tail that wagged the dog." Therefore, at the evidentiary hearing, counsel must address the portion of the $117,500 settlement figure that was attributable to defendant's ability to use the Excess Materials.

(Rec. Rul. at 14.)

Crestron argues that because MPI did not maintain Excess Materials in accordance with industry standards, MPI is in material breach of the Settlement Agreement, such that Crestron is discharged from its obligation to pay MPI any money,[3] and therefore, the

---

[2] Crestron maintains that Magistrate Judge Margolis's comment that the Excess Materials issue was the "tail that wagged the dog" during the negotiation process "demonstrates that instead of analyzing the language in the Settlement Agreement, the Magistrate Judge considered hearsay from the mediation." (Reply at 2.) However, Crestron does not explain how such hearsay was relied on, and aside from one observation about the mediation process, there is nothing in the Recommended Ruling suggesting Magistrate Judge Margolis imported any information she obtained during settlement negotiations.

[3] "Under Connecticut law, an uncured, material failure of performance by one contracting party discharges the other party from any further performance under the contract, which is rendered unenforceable *in toto*." *O&G Indus. Inc. v. Nat'l R.R. Passenger Corp.* 537 F.3d 153, 163 (2d Cir. 2008).

6

amount of money attributable to its ability to use Excess Materials is irrelevant. Because determining whether either MPI or Crestron is in material breach of the Settlement Agreement[4] requires an evidentiary hearing, the non–breaching party's remedy in the event of a material breach remains to be adjudicated after such a hearing.

III.    Conclusion

For these reasons, Defendant's [Doc. # 98] Objection is OVERRULED and the Recommended Ruling [Doc. # 91] is APPROVED and ADOPTED. Plaintiff's [Doc. # 53] Motion to Reopen Case and/or Enforce Settlement Agreement is GRANTED only to the extent Plaintiff seeks to reopen the case to consider these motions to enforce. Plaintiff's [Doc. # 63] Supplemental Motion to Enforce Settlement and Release Agreement and Defendant's [Doc. # 73] Motion to Enforce Settlement Agreement are denied without prejudice to renew based on the Magistrate Judge's conclusion following the evidentiary hearing described above.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 29th day of March, 2011.

---

[4] A breach is material if it is a "failure to do something that is so fundamental to a contract that the failure to perform that obligation defeats the essential purpose of the contract or makes it impossible for the other party to perform under the contract." *See id.* (quoting 23 *Williston on Contracts*, § 63:3 (4th ed, 2007)).